**Janet CLOSE, Plaintiff,**

v.

**AMERICAN AIRLINES, INC. and British West Indian Airways, Ltd., Defendants.**

**No. 84 Civ. 0569–CLB.**

United States District Court, S.D. New York.

July 27, 1984.

---

Richard A. Beider, Thomas Nadeau, Koskoff, Koskoff & Beider, Bridgeport, Conn., for plaintiff.

James A. Gallagher, Jr., Robert A. Faller, Moore, Berson, Lifflander, & Mewhinney, Garden City, N.Y., for defendant American Airlines.

Eugene Massamillo, Condon & Forsyth, New York City, for defendant BWI.

### MEMORANDUM AND ORDER

BRIEANT, District Judge.

This action was filed initially in the United States District Court for the District of Connecticut on April 13, 1982. By order dated January 6, 1984 made by the Hon. Robert C. Zampano, U.S.D.J., the action was transferred to this district since *in personam* jurisdiction could not be obtained there over co-defendant Trinidad & Tobago (BWIA International) Airways Corporation (sued as British West Indian Airways, Ltd. and hereafter "BWIA").

By motion filed June 21, 1984 and fully submitted on July 17, 1984, defendant BWIA seeks an order pursuant to Rules 12(b)(1) and (2) and 56, F.R.Civ.P., granting judgment as a matter of law dismissing the cross-claims. On the same papers, BWIA also seeks by oral motion to dismiss the complaint as against itself; such a dismissal had been agreed to by plaintiff, however, that agreement was given under the mistaken impression that the co-defendant American Airlines, Inc. ("American") would not contest the dismissal of BWIA. When the facts turned out otherwise, this Court authorized plaintiff to recede from her agreement.

The complaint alleges diversity of citizenship as the jurisdictional basis, and complete diversity is present. However, as to American, as will appear in our discussion of the facts which follows, liability without fault is predicated on the Warsaw Convention, 49 Stat. 3000, et seq. (1934), reprinted after 49 U.S.C. § 1502.

Plaintiff, an American citizen residing in Connecticut, testified on her deposition, and we assume for this motion that she was a ticketed international passenger on American's Flight No. 645, traveling on April 20, 1980 from Montego Bay, Jamaica to New York with an intermediate scheduled stop at Kingston, Jamaica. While the aircraft was on the ground at Kingston, where it received and discharged passengers, plaintiff walked down the moveable steps from the plane to the ground and spoke with her sister, a passenger on an Air Canada flight to Toronto, which also had a brief layover at Kingston, Jamaica. While speaking with her sister near the foot of the stairs, plaintiff was struck by the jet-wash of a nearby BWIA aircraft which knocked her down and threw her several feet causing personal injury.

As to BWIA the complaint is based solely on general negligence principles, since plaintiff never was a BWIA passenger. The cross-claim by American against BWIA is based essentially on common law principles of contribution or indemnity.

At issue before the Court is whether the original claim or the cross-claim may be adjudicated against BWIA in this forum in light of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et seq.*

BWIA is licensed to do business in New York, where it has an agent to accept service of process and also operates a regular terminal facility. It is also a "foreign state" as that term is defined in 28 U.S.C. § 1603(a); a point not disputed, indeed af-

firmatively alleged in American's cross-claim.

Accordingly, this action may be maintained in a court of the United States only if BWIA is not immune from suit under 28 U.S.C. § 1604. The only relevant basis suggested for finding no immunity here is found in the third clause of 28 U.S.C. § 1605(a)(2) which reads in relevant part as follows:

"§ 1605. *General exceptions to the jurisdictional immunity of a foreign state.*

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

\*    \*    \*    \*    \*    \*

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; *or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.*" (Emphasis added).

Here the event clearly was an act performed outside the United States in connection with a commercial activity of the foreign state elsewhere. The only impediment to the exercise of jurisdiction is the need to show also that that act (discharging the jet-wash negligently while operating an aircraft in Jamaica which injured an American), caused a "direct effect in the United States" within the statute.

If read literally, of course it did. Mrs. Close's bank accounts in the United States were diminished directly as a result of her need for medical care. Her disability diminished the available labor force in the country, thereby diminishing the national treasury and reducing the income taxes she must pay. Since American, as her international carrier, occupied a position under the Warsaw Convention tantamount to that of an insurer, American's treasury, or that of its insurer is reduced accordingly. All these results, foreseeable at the time of the negligent conduct in Jamaica should qualify as "direct" to allow jurisdiction.

However, there is considerable and respectable controlling authority to the effect that personal injury, or even death, inflicted on Americans while they are abroad does not have a direct effect in the United States, within the statute, simply because of the consequent economic loss to the American victims or their heirs. In *Upton v. Empire of Iran,* 459 F.Supp. 264, 266 (D.D.C.1978), *aff'd mem.* 607 F.2d 494 (D.C.Cir.1979), the roof of an airport terminal building in Iran collapsed, killing and injuring American citizens awaiting departing international flights. Judge Richey held:

"The dispositive question posed is whether defendants' negligent operation and maintenance of Mehrabad Airport 'cause[d] a direct effect in the United States.' 28 U.S.C. § 1605(a)(2), clause 3. The House Report which accompanied the Immunities Act describes section 1330(b) as creating a federal long-arm statute over foreign states. The drafters explain that the Act's long-arm statute is patterned after the District of Columbia's long-arm statute. \* \* \*

The Court finds that causing injury to American citizens abroad is insufficient to satisfy the requirements of the District of Columbia long-arm statute. *See Leaks v. Ex-Lax, Inc.,* 424 F.Supp. 413 (D.D.C.1976) (suffering pain in the District caused by an injury received outside the District is insufficient to invoke the court's jurisdiction under the long-arm statute); *Norair Engineering Associates, Inc. v. Noland,* 365 F.Supp. 740 (D.D.C.1973) (financial expenditures and indebtedness incurred in the District due to an injury outside the District does not establish a sufficient nexus for jurisdiction under the long-arm statute)."

Similarly, in *Harris v. VAO Intourist Moscow,* 481 F.Supp. 1056, 1062 (E.D.N.Y. 1979) an American died in a hotel fire in

Moscow, Russia and suit was brought under 28 U.S.C. § 1605(a)(2). In dismissing the action, Judge Weinstein held:

"Obviously the negligent operation of a hotel in Moscow causing the death of a United States resident has effects in the United States; here it leaves aggrieved relatives in this country. But the precise issue is not whether the fire had any effect here, but whether it had a 'direct effect' in the United States within the meaning of the statutory language. Indirect injurious consequences within this country of an out-of-state act are not sufficient contacts to satisfy the 'direct effect' requirement of section 1605(a)(2)'. Congress explained that the third clause of section 1605(a)(2) embraces 'commercial conduct abroad having direct effects within the United States which would subject such conduct to the exercise of jurisdiction by the United States consistent with principles set forth in section 18, Restatement of the Law, Second, Foreign Relations Laws of the United States (1965)' H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 13, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 6604, 6618. The reference to section 18 of the Restatement (Second) of the Foreign Relations Laws of the United States suggests that the term 'direct effect' requires a substantial impact in this country that is a directly foreseeable result of the negligent act outside the country; it is essentially a long-arm provision...." *Id.* at 1602.

Perhaps our understanding of § 1605(a)(2) may be improved by contrasting with the cases concerning Americans injured abroad, those cases in which a direct effect has been found in the United States. For example, *Decor by Nikkei International v. Federal Republic of Nigeria,* 497 F.Supp. 893, 904 (S.D.N.Y.1980), *aff'd* 647 F.2d 300 (2d Cir.1981) involved contracts for the sale of goods by an American corporation to the Nigerian government, which contracts were supported by letters of credit to be performed in the United States. Repudiation of the contracts and the letters of credit were held

acts sufficient to satisfy the "direct effect" requirement. The case was affirmed on appeal along with others *sub nom. Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300 (2d Cir. 1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). In so doing, the Court of Appeals approved *Harris* and *Upton,* both quoted *supra,* holding in fn. 35:

"35. *Harris* and *Upton* involved Americans injured overseas, but since the injured parties there were natural persons, not corporations, it is easy to locate the 'effect' outside the United States. Whether an American corporation injured overseas incurs a direct effect in the United States remains an open question."

This Court concludes in light of *Texas Trading,* that American Airlines' reliance here on *Matter of Rio Grande Transport, Inc.,* 516 F.Supp. 1155 (S.D.N.Y.1981) is misplaced. *Rio Grande,* decided after *Texas Trading,* involved litigation arising out of a collision at sea between a vessel owned by an American corporation and one belonging to an Algerian state corporation. In *Rio Grande* the district court answered affirmatively the question left open in fn. 35 of *Texas Trading,* quoted *supra.* Assuming that question was correctly answered, the expression of the Court of Appeals in regard to natural persons in *Texas Trading,* which approves the reasoning of *Harris* and *Upton,* remains controlling precedent here.

That corporations injured in their American pocket books by commercial activities of state trading companies occurring outside the United States would enjoy greater access to the American courts than personal injury or death claimants similarly injured would seem on initial examination to present a somewhat anomalous statutory construction. Be that as it may, in light of *Texas Trading, supra,* this Court must follow *Harris* and *Upton,* without regard to its own view of what Congress intended.

The Court concludes that movant Trinidad & Tobago (BWIA International) Airways Corporation, sued herein as British West Indian Airways, Ltd. enjoys sovereign immunity as a matter of law, which immunity bars this action as to it and also bars the cross-claim. The motion is granted.

There is no just cause for delay, Rule 54(b), F.R.Civ.P. The Clerk shall enter judgment dismissing the complaint and cross-claim as to movant only, as barred by sovereign immunity. No costs.

A status report conference as to the action against American Airlines will be held before me on October 15, 1984 at 9:30 A.M. in Courtroom 705. Furthermore, since the action was transferred to this district solely in the hope of obtaining jurisdiction over BWIA, not available in any event in Connecticut, the remaining parties, if they wish to do so, may following appellate finality of the judgment to be entered hereon, submit a consent order returning the action to the District of Connecticut.

So Ordered.