501 A.2d 643

Louis and Jacqueline TUCKER, H/W and Christine Tucker, by Her Parents and Guardians, Louis and Jacqueline Tucker, Appellants,

v.

WHITAKER TRAVEL, LTD. and Apple Tours and the Ambassador Beach Hotel and Happy Trails Stables and the Hotel Corporation of the Bahamas T/A the Ambassador Beach Hotel.

Louis and Jacqueline TUCKER, H/W and Christine Tucker, by Her Parents and Guardians, Louis and Jacqueline Tucker, Appellants,

v.

WHITAKER TRAVEL, LTD. and Apple Tours and Happy Trails Stables and the Hotel Corporation of the Bahamas T/A the Ambassador Beach Hotel.

Superior Court of Pennsylvania.

Argued April 17, 1985.

Filed Oct. 18, 1985.

Reargument Denied Dec. 26, 1985.

John J. O'Brien, Jr., Philadelphia, for appellants.

Jean C. Hemphill, Philadelphia, for appellees.

Before WICKERSHAM, BECK and CERCONE, JJ.

WICKERSHAM, Judge:

Louis and Jacqueline Tucker and their daughter, Christine, brought this action to recover damages for injuries sustained by Jacqueline and Christine on December 4, 1982, in a horseback riding accident that occurred in the Bahamas.

Appellants set forth the circumstances that led to the accident as follows:

> During November, 1982, [Appellants], Jacqueline and Christine Tucker purchased an "Apple Tour" to the Bahamas. The brochure for the tour stated, "Your choice of three or four nights at any of our three excellent Hotels." One of the three hotels is the Ambassador Beach Hotel. The brochure also stated, "A hospitality desk will be available at the Ambassador Beach Hotel."

> Upon their arrival in the Bahamas, the Tuckers were taken to the Ambassador Beach Hotel, as they were advised by the Final Itinerary given to them by Whitaker Travel.

> All the members of the Apple Tour were gathered in a room where they were addressed by a woman who identified herself as "Ruth". Ruth wore an Apple Tour identification badge and informed the group that she was their Apple Tour representative.

> Ruth required that all individuals present fill out registration cards for the Ambassador Beach Hotel. Ruth

also advised the assembled group that if anyone needed anything they were to see her at the courtesy desk provided by Apple Tours in the Ambassador Beach Hotel.

The Tuckers wished to go horseback riding and Ruth sought and engaged a stable for the Tuckers. Mrs. Tucker paid Ruth three dollars ($3.00) for herself and her daughter. She was advised to pay fifteen dollars ($15.00) to the stables. The Tuckers were transported to the riding stables together with two other young ladies in the stable's service van.

All four advised the stable attendant that they were inexperienced riders and requested that they simply walk the horses. Near the end of the ride the guide fell off his horse and the horses broke off into a gallop. The other four horses followed and threw their riders. All four women were injured and all four received medical treatment. One rider died of head injuries. Mrs. Tucker continues to suffer pain from her disabling injuries. Christine Tucker sustained severe head injury causing paralysis, impairment of eyesight, impairment of ability to speak and traumatical epilepsy; all of which is permanent.

Brief for Appellants at 8–10.

Appellants brought this action against a variety of defendants including appellees herein, the Ambassador Beach Hotel and the Hotel Corporation of the Bahamas.[1] Both of these defendants filed preliminary objections to appellants'

1. Appellants first brought suit by a complaint in assumpsit and trespass filed in July, 1983. The original complaint named as defendant "The Ambassador Beach Hotel c/o The Hotel Corporation of the Bahamas." Shortly thereafter, appellants were informed that the Ambassador Beach Hotel was owned and operated by the Hotel Corporation of the Bahamas.

Appellants responded to this information in two ways. First, they amended their original complaint to name not only "The Ambassador Beach Hotel c/o The Hotel Corporation of the Bahamas" but also to add as a defendant "The Hotel Corporation of the Bahamas trading as the Ambassador Beach Hotel." Second, on October 27, 1984, appellants filed a new, identical action in the Court of Common Pleas of Philadelphia County naming as defendant "The Hotel Corporation of the Bahamas t/a The Ambassador Beach Hotel."

complaint, alleging that they were immune from the jurisdiction of the court under the Foreign Sovereign Immunities Act of 1976 [hereinafter referred to as "FSIA"], 28 U.S.C. §§ 1602–1611. The court below granted the appellees' preliminary objections and dismissed appellants' complaint as to the Ambassador Beach Hotel and the Hotel Corporation of the Bahamas. Appellants then filed the instant appeal.[2]

▮ The Ambassador Beach Hotel is owned and operated by the Hotel Corporation of the Bahamas. The Hotel Corporation, in turn, is a corporate entity established by the Bahamian Legislature and created and owned in full by the Commonwealth of the Bahamas. *See* The Hotel Corporation of the Bahamas Act, 1974; Act No. 20 of 1974. It is clear, therefore, that appellees are "agencies or instrumentalities" of a foreign state entitled to invoke the provisions of the FSIA. 28 U.S.C. § 1603(b).

Under the FSIA, foreign states and their agents are immune from the jurisdiction of federal and state courts in the United States unless the case falls within one or more of the specific exceptions provided in the FSIA. Appellants aver that the "commercial activity" exception is applicable

2. Appellants appealed from the lower court's orders entered March 2, 1984, March 19, 1984, April 11, 1984, May 22, 1984, and June 18, 1984. The appeals were then consolidated for consideration before this court. All of the orders under review concern the grant of appellees' preliminary objections, the denial of appellants' preliminary objections and the dismissal of appellants' complaints against appellees herein. Appellants raise the following issues in this appeal:

A. Whether preliminary objections of defendant-appellees, Ambassador Beach Hotel and the Hotel Corporation of Bahamas, were properly sustained in the absence of discovery and upon the presumption of the truth of the averments in plaintiffs' complaint?

B. Whether it is incumbent upon the lower court to take evidence upon averment of fact contained in preliminary objections and in particular when such preliminary objections do not contain a notice to plead?

C. Whether state court has jurisdiction over foreign corporations owned by a foreign government (Bahamas) which corporations are engaged in commercial activity in the United States?

Brief for Appellants at 7. As we will clarify *infra,* we find that we need discuss only issue C.

in the instant case[3] and that, therefore, the court below could have properly exercised jurisdiction over appellees. The "commercial activity" exception provides:

> A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
>
> \*     \*     \*     \*     \*     \*
>
> (2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).

Appellants contend that of the three clauses contained in section 1605(a)(2), both the first and third clauses provide the court with jurisdiction over the appellees.[4] We will consider each of these clauses separately.

■ The first clause of section 1605(a)(2) states that courts of the United States have jurisdiction over a foreign state in any case "in which the action is based upon a commercial activity carried on in the United States by the foreign state." Thus, this clause requires

> "that the commercial activity involve substantial [contacts] with the United States, and that there be a close connection between the facts of the alleged injury and the transaction or conduct at issue, in order to establish lack of immunity under the FSIA. *Sugarman v. Aeromexico,* 626 F.2d 270 (3d Cir.1980)."

*Tigchon v. Island of Jamaica,* 591 F.Supp. 765 (W.D.Mich. 1984). Appellants set forth numerous examples of appel-

---

**3.** It is clear that none of the other exceptions to the jurisdictional immunity of a foreign state as enumerated in § 1605 apply in the case at bar.

**4.** Clause two, which deals with "an act performed in the United States," is clearly inapplicable to the instant case.

lees' alleged commercial activity in the United States. For the purpose of this appeal, we will assume that all of appellants' allegations are true.[5] Even with the support of this assumption, however, the instant litigation does not fall within the purview of the first clause of section 1605(a)(2). While appellees may indeed conduct commercial activity in the United States, it is clear that appellants' cause of action is not *"based upon"* that alleged commercial activity or any "commercial activity carried on in the United States." Rather, appellants' suit is based upon the alleged negligence of appellees in the Commonwealth of the Bahamas. Thus, the first clause of section 1605(a)(2) is inapplicable to the case at bar.

The similar factual circumstances and legal result of *Tigchon v. Island of Jamaica, supra,* and *Harris v. VAO Intourist, Moscow,* 481 F.Supp. 1056 (E.D.N.Y.1979) support our decision. In both cases the plaintiffs allegedly suffered injuries abroad through an agency or instrumentality of a foreign state, and sought to establish jurisdiction under the "commercial activity" exceptions of section 1605(a)(2).

In *Harris,* an American citizen was killed in a hotel fire in Moscow. Suit was brought against two state-owned Russian tourist services, one of which, Intourist Moscow, owned and operated the hotel, and the other of which, Intourist USA, promoted tours between the United States and the Soviet Union. Intourist USA maintained an office in New York and conducted substantial business there, promoting the use of Intourist, Moscow's hotel facilities in Moscow. The plaintiff there, however, arranged for his accommodations in Moscow through a private travel agency. Noting that the first clause of section 1605(a)(2) requires that a court action "be based

5. We note that in issues A and B, appellants aver that the lower court erred in dismissing their complaint without permitting discovery or taking evidence. Since, even assuming the validity of appellants' allegations, the lower court did not have jurisdiction over appellees, such discovery and evidence were unnecessary and could not support the reinstatement of appellants' complaint as to appellees.

upon" specific commercial activity conducted in the Unit-
ed States, a more stringent test than the typical "doing
business" requirement of many long-arm statutes, the
Court found the action "not based upon commercial activi-
ty in the United States." *Id.* at 1061. The relationship
between negligent operation of the National Hotel and
Intourist's United States activity was too attenuated to
find that the action was "based upon" such activity.
*Tigchon, supra* at 767.

Similarly, in *Tigchon, supra,* plaintiff brought suit to
recover damages for the death of her husband in a water-
skiing accident at the Negril Beach Village, a resort hotel
owned and operated by the Island of Jamaica. Plaintiff
alleged that she and her husband obtained travel literature
advertising the Negril Beach Village at a Michigan travel
agency, and that Jamaica advertises the Negril Beach Vil-
lage in the United States. Plaintiff also made other allega-
tions concerning the "commercial activity" that Jamaica
carries on in the United States. Despite these allegations,
however, the *Tigchon* court held that the plaintiff's cause of
action was not "based upon" substantial contacts with the
United States.

> The death of plaintiff's decedent is allegedly due to the
> negligent conduct of an employee of the Negril Beach
> Village accompanying plaintiff's decedent while waterski-
> ing.... The Act clearly contemplates a direct connection
> between the injury suffered and the contacts with the
> United States. No such direct nexus exists between a
> one-line advertisement in a worldwide listing of hotels, an
> advertisement published by an independent tour operator,
> and the tragic death of Mr. Tigchon while water-skiing.
> Any links are simply too attenuated and indirect to satis-
> fy the first clause of section 1605.

*Tigchon, supra* at 768.

We find that an identical result is warranted in the
instant case. Even assuming that all of appellants' allega-
tions concerning appellees' commercial activity in the Unit-
ed States are valid, it is nevertheless clear that any nexus

between that activity and appellants' cause of action is too attenuated to satisfy the first clause of section 1605.[6]

■ Similarly, we find that appellants' cause of action also fails to satisfy the third clause of section 1605. The third clause provides that a foreign state is not immune from jurisdiction in a case based upon "an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." In the case at bar, the cause of action is clearly based upon an act performed outside the United States in connection with a commercial activity of the foreign state elsewhere. It is equally clear, however, in accordance with case law, that the act did not cause a *direct effect* in the United States.

We again turn to *Harris v. VAO Intourist, Moscow, supra,* to clarify section 1605(a)(2). In that case, plaintiff brought suit pursuant to the commercial activity exception of section 1605. In dismissing the action, the *Harris* court held:

> Obviously the negligent operation of a hotel in Moscow causing the death of a United States resident has effects in the United States; here it leaves aggrieved relatives in this country. But the precise issue is not whether the fire had any effect here, but whether it had a 'direct effect' in the United States within the meaning of the statutory language. Indirect injurious consequences

6. Appellants cite *Sugarman v. Aeromexico,* 626 F.2d 270 (3d Cir.1980) in support of their position. We agree with the *Tigchon* court's analysis of that case:

> *Sugarman v. Aeromexico,* 626 F.2d 270 (3d Cir.1980) is readily distinguishable. There, the national airline of Mexico had daily flights between the United States and Mexico, a clearly more substantial presence in the United States than the purported contacts had by Jamaica here. Moreover, the plaintiff's suit was based upon the canceling or delay of an Aeromexico flight to the United States, leaving the plaintiff stranded in a Mexico airport for 15 hours. His suit was thus directly "based upon" Aeromexico's contacts with the United States. The same cannot be said of [appellants'] suit here. The action must therefore be dismissed.

*Tigchon v. Island of Jamaica,* 591 F.Supp. 765, 768 (W.D.Mich.1984).

within this country of an out-of-state act are not sufficient contacts to satisfy the 'direct effect' requirement of section 1605(a)(2). Congress explained that the third clause of section 1605(a)(2) embraces 'commercial conduct abroad having direct effects within the United States which would subject such conduct to the exercise of jurisdiction by the United States consistent with principles set forth in section 18, Restatement of the Law, Second, Foreign Relations Laws of the United States (1965)' H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 13, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 6604, 6618. The reference to section 18 of the Restatement (Second) of the Foreign Relations Laws of the United States suggests that the term 'direct effect' requires a substantial impact in this country that is a directly foreseeable result of the negligent act outside the country; it is essentially a long-arm provision.

*Id.* at 1602. Thus, despite the obvious economic and emotional effect upon the decedent's family in this country, the court found that defendant's negligence in Moscow did not have a "direct effect" in the United States.

As stated in *Close v. American Airlines, Inc.,* 587 F.Supp. 1062 (S.D.N.Y.1984), "personal injury, or even death, inflicted on Americans while they are abroad does not have a direct effect in the United States, within the statute, simply because of the consequent economic loss to the American victims or their heirs." *Id.* at 1064. Thus, it is clear that the alleged negligence of appellees did not cause a "direct effect" in the United States. Therefore, the third clause of section 1605(a)(2) is also inapplicable to the case at bar.

Since none of the exceptions to the jurisdictional immunity granted to foreign states under the FSIA are applicable to the instant case, the trial court did not err in determining that it did not have jurisdiction over appellees. Thus, the

court properly granted appellees' preliminary objections and dismissed appellants' complaints as to appellees.[7]

Orders affirmed.

---

**7.** Given our assumptions and decision as to issue C, we find it unnecessary to address issues A and B as stated by appellants.