Sammy EBRAHIM, et al., Plaintiffs,

v.

SHELL OIL COMPANY,
et al., Defendants.

Civ. A. No. H–93–2607.

United States District Court,
S.D. Texas,
Houston Division.

March 11, 1994.

John T. McDowell, Houston, TX, for plaintiffs.

George Edward Pickle, Shell Oil Co., Houston, TX, for defendants Shell Oil and Pecten Syria Petro. Co.

Phillip B. Dye, Jr., Houston, TX, for defendants Royal Dutch Petro., Syrian Petro., and Al Furat Petro. Co.

## MEMORANDUM

HUGHES, District Judge.

1. *Introduction.*

An American is injured in an accident in Syria while working for an English subsidiary of an American company. In this action, Ebrahim sued seven companies, working his way back to an American company that is a fifth-generation stockholder of the foreign company that operated the rig where he fell. Because Ebrahim's theory of liability jettisons gratuitously the concept of corporate existence and foreign sovereign immunity, his case will be dismissed.

2. *Background.*

Western Atlas International supplied specialized services to the drilling program Al Furat Petroleum Company was conducting for the Syrian National Petroleum Company in the Syrian Arab Republic. One day in 1991, while Ebrahim was checking hoses as an employee of the Western Atlas International, the ladder that he was on slipped, and he fell and was injured.

This is an ordinary third-party premises liability case by an employee of an invitee. The two possible premises are the drilling rig of Al Furat and the drill site of Syrian National. No particular hazard has been identified that could reasonably be expected to have been the cause of the fall. Surfaces may have been slick and the ladder may not have had slip-resistant footings, but this is all surmise. The facts that are known are simply that Ebrahim fell while on a ladder.

To justify bringing this action in an American court, Ebrahim has sued a variety of tenuously-related entities. They are:

*Al Furat Petroleum:* Operator of the rig; 50% owned by Syrian National Petroleum, the rest by the other defendants in varying shares.

*Syrian National Petroleum:* Wholly owned by the Syrian government; owns 50% of Al Furat.

*Pecten Syria Petroleum:* Delaware Corporation; principal place of business is Syria; owns 15% of Al Furat.

*Syria Shell Petroleum Development:* Dutch; principal place of business in Syria; owns 15% of Al Furat.

*Deminex–Syria:* German; principal place of business in Syria; owns 20% of Al Furat.

*Shell Oil:* Delaware; principal place of business in Houston; owner of Pecten through four wholly-owned subsidiaries.

*Royal Dutch Petroleum:* Dutch; principal place of business in The Haage; one of two ultimate parents of the Royal Dutch/Shell group of companies.

*Deminex–Essen:* German; principal place of business in Germany; owned and controlled in part by political subdivisions of the German government; owns Deminex–Syria.

These descriptions of the defendants indicate the weakness of Ebrahim's position. The only two defendants that had anything to do in fact with his accident are Al Furat and Syrian National. Unless he can show that in some way the corporate identities of the defendants are to be disregarded, the shareholder defendants must be dismissed.

3. *Shareholders.*

■ Incorporation exists to allow the owners to remain distinct from the entity that they own for both procedural and substantive reasons that are valid in economics and at law. The amount of ownership is irrelevant. This is just as true for Shell Oil Company as the sole owner of another corporation as it is for an individual as an owner of an infinitesimally small minor fraction of a company.

■ A wholly-owned subsidiary of a company is a distinct legal entity, responsible for its own wrongs. Yet in this case, Ebrahim has sued, for example, Shell Oil. Ebrahim asks this court to hold Shell liable for the condition of the premises used by a company that is 15% owned by a company that is the wholly-owned subsidiary of a subsidiary of a subsidiary of a subsidiary of Shell. Shell

itself is a wholly-owned subsidiary of yet another company.

Ebrahim argues that incorporation should be ignored because the Shell group of companies is, in fact, just one world-wide corporation with the same group of officers and directors exercising control over every corporate entity. While it should be axiomatic that the shareholders will elect directors who will act as their fiduciary agent in setting policy for the business of the company, neither the community of interest nor the flow of policy allows the distinctions between the entities to be ignored. Ebrahim asserted that *Shells* should be defrocked of their corporate vestments, but he has no facts. Ebrahim has no evidence of the kind of behavior that might allow parallel or surrogate liability, like undercapitalization of Al Furat. Moreover, Al Furat is controlled by Syria, as a one half-owner, with the right to elect 50% of the directors and to name the chairman.

Even if the court collapsed all the non-Syrian defendants into one legal shell, Ebrahim points to no evidence that any of these defendants actually did anything on the rig or were in any way responsible for what happened. For example, Ebrahim does not say that one of the non-Syrian defendants supplied the ladder. Ebrahim does swear that he saw some of the managers of the rig wearing jackets bearing indicia of the Royal Dutch/Shell group of companies. Assuming this to be true, it is unremarkable that the Shell name and symbol are used throughout its subsidiaries. The wearing of a Shell jacket yields no clue about the identity or role of the people whom he saw. If he were able to swear that a man wearing a Shell jacket bumped into the ladder, causing it to fall, he might be in a position to connect some Shell to his injury, but he cannot.

All of the defendants except Al Furat and Syrian National are mere shareholders of the potentially liable companies, and they are entitled to a judgment in their favor.

### 4. Personal Jurisdiction.

■ Even if Ebrahim could show some active responsibility on the part of the non-Syrian defendants, this court has personal jurisdiction over only Shell Oil Company.

All the other defendants are incorporated and domiciled abroad with no contacts in the United States, except Pecten Syria Petroleum Company. Pecten is a Delaware corporation with its principal place of business in Syria; it has no presence in Texas. The necessity of personal jurisdiction before a court may act on a defendant has always been universally recognized. *See Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1877). Every defendant other than Shell Oil can be also be dismissed for lack of personal jurisdiction.

### 5. Foreign Governments.

■ Ebrahim is left to complain about Al Furat and Syrian National Petroleum, the two defendants that in fact had something to do with this accident. They are both immune from civil liability in American courts. *See* The Foreign Sovereign Immunities Act, 28 U.S.C. § 1603 (1990). An entity is immune from suit if it is an instrumentality of a foreign state. Syrian National Petroleum is the arm of the Syrian government that develops that nation's mineral patrimony.

■ The board of directors of Al Furat is controlled by the Syrian government through Syrian National Petroleum. Syria retains title to the sub-surface minerals in Syria. Al Furat exists as a means for Syria to exploit Syrian resources in Syria, as a direct governmental policy. Al Furat is an instrumentality of Syria.

■ Ebrahim asserts that this case is an exception to sovereign immunity because the claim arises from merely commercial activities outside the United States that have a direct effect in the United States. *See Harris v. VAO Intourist Moscow,* 481 F.Supp. 1056, 1063 (E.D.N.Y.1979). The law may have that exception, but again Ebrahim has no basis in fact for pleading the exception. His evidence for the effect in this case is that, because about 40% of the oil consumed in the United States is imported, an accident injuring a perforation worker on a rig in Syria has a direct effect within the United States. Even if we include the additional fact that this accident reduces the healthy American workforce since the worker is an

**68**

American, the domestic effect is remote and contingent and imperceptible.

## 6. *Conclusion.*

If Ebrahim has a claim, he will have to make it against the party who did the acts of which he wants to complain, and he will have to bring the suit in a court that has both personal and subject jurisdiction. This is the kind of lets-sue-anybody-and-maybe-figure-it-out-later suit that produces the need for sanctions and waste to the economy.