**FOUR CORNERS HELICOPTERS, INC., a Colorado corporation, Plaintiff,**

v.

**TURBOMECA S.A., a French corporation; Societe Nationale Industrielle Aerospatiale, a French corporation; Aerospatiale Helicopter Corporation, a Delaware corporation, Aviall, Inc., a Delaware corporation and Roberts Aircraft, Inc., an Arizona corporation, Defendants.**

**Civ. A. No. 87–K–174.**

United States District Court,
D. Colorado.

Jan. 20, 1988.

---

L. Richard Musat, Chris A. Mattison, Hall & Evans, Denver, Colo., Douglas E. Bragg, Jane A. Tidball, Bragg & Dubofsky, Denver, Colo., for plaintiff.

Gene M. Hoffman, David E. Boyd, Hoffman & Boyd, Denver, Colo., Lillick, McHose & Charles, San Francisco, Cal., William L. Robinson, for SNIAS.

Frank D. O'Loughlin, Joseph E. Kovarik, Rothgerber, Appel, Powers & Johnson, Denver, Colo., M. Eugene Wooley, Kein & Wooley, Los Angeles, Cal., for Aviall, Inc.

Thomas J. Byrne, Michael L. Poindexter, Byrne, Kiely & White, Denver, Colo., for Roberts Aircraft, Inc.

Mary A. Wells, Weller, Friedrich, Ward & Andrew, Denver, Colo., for Turbomeca S.A.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

### I THE BACKGROUND

At approximately 9:30 a.m. on September 14, 1985 a helicopter crashed near Craig, Colorado. The pilot was killed. The helicopter was destroyed. It was a model known as the Aerospatiale S.A. 315B "Lama," civil registration number N3836E. Its frame serial number was 2571. It was powered by an Artouste III B turbine engine. The engine bore a manufacturer's serial number 1064.

Societe Nationale Industrielle Aerospatiale (SNIAS) is a French corporation. It manufactures helicopters. In particular, it manufactures the model 315B helicopter.

Turbomeca S.A. is also a French corporation. It manufactures engines. In particular, it manufactures an engine known as the Artouste III.

The Aerospatiale Helicopter Corporation (AHC) is a Delaware corporation. It is a wholly owned subsidiary of and the exclusive U.S. distributor for SNIAS.

Aviall Incorporated is a Delaware corporation engaged in the repair and rebuilding of certain products.

Roberts Aircraft is an Arizona corporation also engaged in the repair and rebuilding of helicopters and helicopter parts.

The helicopter that crashed on September 14 was leased by plaintiff. It filed suit

in this court on February 2, 1987 against the named defendants. It has deposited with this court a seven claim complaint. The first claim seeks damages for breach of express warranty by defendants Turbomeca, SNIAS and Roberts. The second and third claims allege breach of implied warranties of merchantability and fitness respectively by the same defendants. The fourth claim seeks damages in negligence against defendants Turbomeca, SNIAS, AHC and Roberts. The fifth claim is also for negligence against defendants Turbomeca, SNIAS, AHC, Roberts and Aviall. The sixth claim for relief is in strict liability against Turbomeca, SNIAS and Roberts. The final claim is against the same defendants for negligent misrepresentation.

Jurisdiction is alleged in the complaint under 28 U.S.C. § 1332 in the case of defendants Turbomeca, AHC, Aviall and Roberts. In the case of defendant SNIAS, jurisdiction is predicated upon 28 U.S.C. § 1330.

## II THE MOTIONS

There are two pending motions. Both have been filed by defendant SNIAS. The first seeks to have the complaint against it dismissed on the basis of lack of subject matter jurisdiction. The second directs itself to the question of personal jurisdiction.

## III DEFENDANT SNIAS'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

SNIAS's argument on the question of subject matter jurisdiction runs as follows. It asserts it is an agent or instrumentality of the government of France within the meaning of 28 U.S.C. § 1603(b). This is not disputed by plaintiff. Accordingly the sole basis for the jurisdiction of this court over plaintiff's claims against it is afforded by 28 U.S.C. § 1602 *et seq.* Thus, SNIAS asserts, it is entitled to sovereign immunity as provided for in 28 U.S.C. § 1604.

Plaintiff, however, in its complaint as amended, maintains this suit against SNIAS comes within the exceptions to sovereign immunity set forth in 28 U.S.C. § 1605(a)(2) and (5). These exceptions, insofar as relevant here, apply in the case of actions based upon commercial activities carried on outside the United States but having a direct effect in this country, and tortious acts or omissions in the United States respectively.

### 1. *The Commercial Activities exception.*

■ The history of the helicopter which crashed in 1985 is important. Consideration of this motion is complicated by the fact plaintiff has neither agreed nor disagreed entirely in the pleadings with the version of this aspect of the case forwarded by defendant. SNIAS asserts it manufactured in France in 1979 an S.A. 315B Lama helicopter airframe, serial number 2571. This, it claims, was equipped with an Artouste IIIB engine serial number 2286. This engine had been manufactured by defendant Turbomeca. The engine was new when installed (Partiot Affidavit ¶ 4).

According to SNIAS, the helicopter was sold to a French company and was operated in Europe for a period of approximately two years. In 1981 the helicopter was involved in a crash in La Norma, France. The salvaged hull, serial number 2571, was then transported to the United States where it was repaired by defendant Roberts. The Artouste IIIB engine, serial number 1064 was installed in the aircraft. Defendant SNIAS denies having any knowledge as to how the hull of the helicopter it had manufactured and sold in France made its way to the United States. In particular, it denies any role in the sale or repair of that hull in this country (Partiot Affidavit ¶ 5). SNIAS further maintains this is a subrogation claim by plaintiff.

Plaintiff clearly agrees the helicopter was manufactured by defendant SNIAS in 1979 (Response brief of October 7, 1987 at p. 4). It also accepts the helicopter as originally manufactured crashed in France in 1981 (*id.*). It accepts another engine was installed in the salvaged hull by defendant Roberts (Amended Complaint ¶ 16). An issue of material fact remains, however, as to how the hull made its way to the United States, and in particular whether defendant SNIAS was involved in its impor-

tation into this country. It is important to note, however, that plaintiff does not allege in its complaint, or anywhere else, that defendant SNIAS was responsible for moving the salvaged helicopter into the United States.

As I have already pointed out, plaintiff seeks damages from SNIAS under theories of breach of express warranty, breach of implied warranties of merchantability and fitness for purpose, negligent design, manufacture and negligent failure to warn, negligent repair, modification and inspection, strict liability and negligent misrepresentation.

28 U.S.C. § 1605(a)(2) posits that a foreign state shall not be immune from the jurisdiction of this court in any case;

> in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

Defendant submits, and I agree, the first two of the exceptions contained in this section are of no application in the present context. Defendant SNIAS did not carry on a commercial activity in the United States and the action is not based upon any acts in the United States in connection with a commercial activity elsewhere. Plaintiffs argument insofar as based upon this provision, therefore, must stand or fall on the final proviso, an act executed outside the United States causing a direct effect in the territory of the United States.

SNIAS essentially bases its contention that this provision is of no effect in the instant context upon two arguments. First, it asserts there was no nexus between the original sale of the helicopter by SNIAS and plaintiff's alleged damages such that plaintiff's claims are based upon commercial activity by defendant SNIAS. Second, it maintains there is no jurisdiction under this provision because plaintiff's insurance subrogation claims are not the direct effect of any commercial activity by SNIAS.

The first limb of this argument, that there is a requirement of a nexus between the commercial activity in question and the alleged damages in order to establish an exception to immunity under § 1605(a)(2), is based upon *Tote v. Iberia International Airlines,* 649 F.Supp. 41, 42 (E.D.Pa.1986) and *Matter of Sedco, Inc.,* 543 F.Supp. 561, 565 (S.D.Tex.1982) *vac.* on other grounds, 610 F.Supp. 306 (1984). This argument lends nothing to the direct effect exception, *Proyecfin De Venezuela v. Banco Industrial,* 760 F.2d 390, 394 (2d Cir.1985) embraced within that proviso and does not provide a separate basis for skirting the exception to immunity. First, a cause of action is for the purposes of the statute "based upon" "any act performed by a named defendant that either constituted or directly caused the occurrence of an element of the cause of action.", *Gibbons v. Udaras na Gaeltachta,* 549 F.Supp. 1094, 1109 (S.D.N.Y.1982). This was clearly the case as regards the allegations in the complaint in this action. Second, *Tote* was concerned with commercial activity carried on in the United States and posits the commonsense principle that when this ground is raised, a nexus must exist between the commercial activity carried on in this country and the plaintiff's grievance *id.* at 42. *Sedco* simply demands the particular acts alleged should constitute a commercial activity.

Turning, therefore, to the difficult question of whether the commercial activities of defendant SNIAS had a direct effect in the United States for the purposes of this section, defendant submits a number of different grounds in support of its contention. First, it submits the harm alleged must be foreseeable and immediate in order to be the direct effect of any commercial activity. Plaintiff's insurance subrogation claims, it argues do not constitute such. In a similar vein, SNIAS maintains property damage claims alone cannot support subject matter jurisdiction under this heading. Further, there remains the issue of nexus between

the commercial acts complained of and the injury allegedly suffered in this country.

Since its enactment, the Foreign Sovereign Immunity Act has spawned a considerable body of litigation. The statute is broadly drafted, in a seemingly conscious attempt to leave the difficult matters of policy involved therein to the courts. The exceptions allowed to the root principle of immunity are of an uncertain ambit and fail to take explicit account of the wide variety of fact situations which may activate the immunity doctrine. In particular, no distinction is made in the provision itself between damage suffered in the United States and having clear effect here, and damage incurred by U.S. interests abroad, but still incurring knock on effects in this country. No distinction is made between the application of the statute's exceptions to individuals on the one hand and corporations on the other, notwithstanding the fact that differing considerations may come into play when dealing with both, see *Close v. American Airlines, Inc.*, 587 F.Supp. 1062, 1065 (S.D.N.Y.1984). The relationship between subject matter jurisdiction and personal jurisdiction is not carefully delineated, see *Transamerican S.S. Corporation v. Somali Democratic Republic*, 590 F.Supp. 968, 976 (D.D.C.1984) *affd* in part and *revd* in part, 767 F.2d 998 (D.C.Cir. 1985). All of these matters have had to be dealt with by the courts. Not surprisingly, the cases have frequently produced differing results, see *Yugoexport, Inc. v. Thai Airways*, 749 F.2d 1373, 1375 (9th Cir. 1984), *cert. den.* 471 U.S. 1101, 105 S.Ct. 2326, 85 L.Ed.2d 844 (1985), and the cases cited therein.

These difficulties are particularly evident in the context of the direct effect exception, and this is a particularly difficult example of it. No Supreme Court or Tenth Circuit authority exists discussing the scope of this exception. I am unaware of any law in this district on the matter.

Consideration of the exception is complicated by the fact those courts have examined the meaning of "direct effect" have adopted two somewhat divergent approaches. The first involves examining the nature of the injury allegedly occurring in this country and determining from this whether such injury has had a sufficient impact in the United States to warrant haling the foreign sovereign into court, see *Australian Government Aircraft Factories v. Lynne*, 743 F.2d 672 (9th Cir.1984), *cert. den.* 469 U.S. 1214, 105 S.Ct. 1189, 84 L.Ed.2d 335 (1985) (property damage claims from aircrash do not support jurisdiction under "direct effect" exception), *Texas Trading v. Federal Republic of Nigeria*, 647 F.2d 300 (2d Cir.1981), *cert. den.*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982) (in the case of a foreign corporation, the relevant inquiry is whether the corporation has suffered direct financial loss). This approach, based as it is upon rigid categorization of injury and plaintiff status, is unsatisfactory. It encourages unhelpful and somewhat arbitrary distinctions which have resulted only in confusion. This sense of confusion is evident from the parties pleadings on the instant motion, caviling as they do over whether property and financial damage of the nature involved here can be recovered under the exception to immunity each seeking to rely upon a series of often irreconcilable cases.

The second approach is more in tune with the overall intent of the statute. Here, the focus is not on the nature of the injury sustained, but instead on the strength of the nexus between the allegedly unlawful activity and the United States. The inquiry under this preferable analysis is a causal one, rather than one revolving around itemization or classification of damage sustained. As one court has asserted, "[t]he distinction between an effect that is 'direct' and one that is indirect is not quantitative", *Zernicek v. Brown and Root*, 826 F.2d 415, 419 (5th Cir.1987).

That this is the correct approach is evident from a consideration of the function of the test. In requiring the commercial activity of the foreign sovereign to have a direct effect in the United States, the statute clearly contemplates and demands a nexus between the allegedly unlawful activity and damage sustained which is conceptually distinct from that provided for by the traditional private law rules of causa-

tion. As one court has pointed out, the requirement serves a very definite policy:

> The statute seeks a balance between the provision of a convenient forum for claimants aggrieved in commercial dealings with foreign states and the promotion of comity and harmony between the United States and other nations ... To extend jurisdiction to claims brought by all persons indirectly injured by commercial acts of foreign states would subject them to the jurisdiction of United States courts in an enormously expanded number of cases.
>
> *Colonial Bank v. CGMF*, 645 F.Supp. 1457, 1465 (S.D.N.Y.1986).

Thus, the fact a plaintiff's claim might state a colorable cause of action is not the deciding factor. Nor is it determinative that the plaintiff has suffered injury, "the size of the loss is not determinative of the United States Courts' jurisdiction, which turns rather on whether the injury was direct" *Colonial*, at 1465. The sole question is thus whether the damage alleged is sufficiently "direct" for the purposes of the immunity statute. I am of the opinion in the instant case, it is not.

■ "The commonsense interpretation of a 'direct effect' is one which has no intervening element, but, rather, flows in a straight line without deviation or interruption." *Upton v. Empire of Iran*, 459 F.Supp. 264, 266 (D.D.C.1978) *affd.* 607 F.2d 494 (D.Cir.1979). The injury suffered by the plaintiff must be "a substantial, foreseeable and immediate causal result of an act of the defendant outside the United States in connection with defendants ccmmercial activity elsewhere", *Decor by Nikkei International v. Federal Republic of Nigeria*, 497 F.Supp. 893, 905 (S.D.N.Y. 1980) *affd*, 647 F.2d 300 (2d Cir.1981). The activity outside this country must have a "substantial" impact in the United States, *Harris v. Vao Intourist, Moscow*, 481 F.Supp. 1056, 1065 (E.D.N.Y.1979). The effect in, and contacts with this country must be more than merely fortuitous, *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1111 (5th Cir.1985).

■ Plaintiff's only argument in favor of its assertion that the exception to immunity should apply is that the aircraft crashed here. While this amounts to an allegation that SNIAS' commercial activities in France may have had an effect here, it does not establish that this effect was "direct" within the meaning of the statute. As I have pointed out, the complaint as amended in this action makes no effort to conceal the fact the damage complained of was caused by the failure of the helicopter engine (Complaint ¶ 12). It concedes this engine was installed not by SNIAS, but by defendant Roberts (*id.* ¶ 19). No allegation is made to the effect SNIAS had any role in the importation of the salvaged helicopter hull into the United States. The complaint does not provide any basis for inferring the effect in this country was foreseeable or the immediate causal effect of an act of defendant SNIAS or was substantial. If anything, it actually outlines the very intervening elements which preclude the inference of "direct effect" as that term has been judicially interpreted.

My conclusions in this regard are fortified by contrasting the facts of this case with those of another products liability/breach of warranty action against a foreign, government-controlled defendant. In *Ohntrup v. Firearms Center Inc.*, 516 F.Supp. 1281 (E.D.Pa.1981), *affd.*, 760 F.2d 259 (3d Cir.1985), the plaintiff sought damages in respect of injuries sustained as a result of the malfunctioning of a firearm. The defendant sought to join the manufacturer of the gun, whose stock was wholly owned by the Turkish government. In determining whether the direct effect exception to sovereign immunity applied, the court first examined whether the injuries sustained as a result of the use of the allegedly defective gun were a substantial and foreseeable result of the manufacturer's actions. Here, it was found they were, but only because the sales agreement specifically envisaged the firearm in question being sold in the United States and provided for the possibility of defective parts. Here, it is impossible to envisage these requirements of forseeability being realized where the helicopter was sold in France, was involved in an accident there, was

transported to this country without the involvement of SNIAS and was fitted with another and allegedly defective engine.

### 2. *The Tortious Actions exception.*

██ 28 U.S.C. § 1605(a)(5) provides that a foreign state is without immunity in an action,

in which money damages are sought against a foreign state for personal injury or death or damage to or loss of property, occurring in the United States and caused by the tortious acts or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment . . .

It is clear that in order for this exception to apply, the entire tort must have occurred in the United States, *Asociacion de Reclamantes v. United Mexican States,* 735 F.2d 1517, 1524 (D.C.Cir.1984) *cert. den.,* 470 U.S. 1051, 105 S.Ct. 1751, 84 L.Ed.2d 815 (1985). This was clearly not the case with any of the torts alleged here.

My findings regarding the question of subject matter jurisdiction obviate the necessity to determine whether there were grounds for the assertion of personal jurisdiction over defendant SNIAS.

Accordingly, it is ORDERED, defendant SNIAS motion to dismiss for lack of subject matter jurisdiction is GRANTED.