UNITED WORLD TRADE,
INC., Plaintiff,

v.

MANGYSHLAKNEFT OIL PRODUCTION ASSOCIATION, Kazakhstan Commerce Foreign Economic Association, and Ministry of Energy and Fuel Resources of Kazakhstan Republic, Defendants.

Civ. A. No. 92–S–1917.

United States District Court,
D. Colorado.

May 21, 1993.

Phillip Barber, Karen Ostrander, Welborn, Dufford, Brown & Tooley P.C., Denver, CO, for plaintiff.

Gordon Greiner, Davis O'Connor, Stephen Bain, Holland & Hart, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

SPARR, District Judge.

THIS MATTER came before the court for hearing on the Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, Lack of Personal Jurisdiction, and Improper Venue. Also pending are: (1) the Defendants' Motion to Strike Newspaper Articles and Other Hearsay; and (2) the Plaintiff's Motion to Strike. The court, having reviewed the motions, the exhibits, the affidavits, the entire case file, the responses, the replies, the supplements, the surreply, the arguments made by counsel in open court, and the applicable law and being fully advised in the premises, makes the following Findings, Conclusions and Order.

### 1. The Claims

This case involves several written agreements: (1) the Protocol Agreement between United World Trade, Inc. (UWT) and representatives of the Defendants, signed on July 25, 1991 in Almaty (Alma–Ata), Kazakhstan (Exhibit A to Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss); (2) the Preliminary Agreement between UWT and the Defendants, signed on December 17, 1991 in Moscow (Exhibit B to Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss); and (3) the Contract for Sale of Crude Oil between UWT,

Defendant Mangyshlakneft Oil Production Association (MOP), and Defendant Kazakhstan Commerce Foreign Economic Association (KCFEA), signed on January 23, 1992 in Moscow (Exhibit E to Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss). The Protocol Agreement is not at issue. The Preliminary Agreement is the subject of the First Amended Complaint. The Preliminary Agreement "was to serve as an umbrella for other contracts." (First Amended Complaint, ¶ 7). The First Amended Complaint alleges breach of the Preliminary Agreement, asserting four claims for relief against the Defendants: (1) breach of the Preliminary Agreement; (2) anticipatory repudiation of the Preliminary Agreement; (3) fraud and misrepresentation in entering into the Preliminary Agreement; and (4) consequential damages incurred because of the Defendants' failure to perform their obligations under the Preliminary Agreement. The First Amended Complaint also mentions the Contract for Sale of Crude Oil, but does not specifically allege a breach of that Contract.

## 2. Factual Background

Pursuant to the Contract for Sale of Crude Oil, MOP delivered oil in four shipments to UWT in Novorossiysk. The oil was then sent to an Italian company (ISAB) in Sicily for refining. ISAB sent payment for the oil to UWT's account at the London branch of the San Paolo Bank. UWT paid MOP for the oil by posting an irrevocable Letter of Credit in favor of MOP with the London branch of the San Paolo Bank. In accordance with the Letter of Credit and upon presentation of a bill of lading, the London branch of the San Paolo Bank transferred payment to an account belonging to an agent of MOP in Paris, France. The proceeds of the Letter of Credit were disbursed to the parties in U.S. dollars.

The bill of lading for the third of the four shipments of oil was apparently stolen from a KCFEA representative. The missing bill of lading created potential liability for ISAB. UWT asserts that the failure to deliver the original bill of lading forced UWT to issue a contractual guarantee to indemnify ISAB for six years for six million dollars. After the third shipment of oil, the Defendants allegedly refused to supply any additional oil to UWT, resulting in this lawsuit for breach of the Preliminary Agreement.

## 3. Subject Matter Jurisdiction

■ It is undisputed that 28 U.S.C. § 1330(a), in conjunction with the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602 *et seq.*, provides the only basis for subject matter jurisdiction over an action against a foreign state. Under the FSIA, foreign states and their agencies and instrumentalities are immune from suit in the courts of the United States except as otherwise provided by the Act. Pursuant to 28 U.S.C. § 1604, "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 and 1607 of this chapter." Failure to satisfy the statute's exceptions deprives the district court of subject matter jurisdiction. *Walter Fuller Aircraft Sales, Inc. v. Republic of the Philippines,* 965 F.2d 1375, 1383 (5th Cir.1992) (citations omitted). The foreign state always has the burden of persuasion on immunity. Once the foreign state makes a prima facie showing of immunity, the plaintiff seeking to litigate in the United States has the burden of coming forward with facts showing that an exception applies. *Walter Fuller Aircraft Sales,* 965 F.2d at 1383.

It is also undisputed that the Defendants all meet the definition of "foreign states" for the purposes of jurisdiction under 28 U.S.C. § 1602 *et seq.* Defendant MOP is a state organization of industrial enterprises that is wholly owned by the Republic of Kazakhstan. Defendant KCFEA was established by decree of the Council of Ministers of the former U.S.S.R. and is now an instrumentality of and wholly owned by the Republic of Kazakhstan. Defendant Ministry of Energy and Fuel Resources of the Republic of Kazakhstan was established by decree of the President of the Republic of Kazakhstan and is an executive and administrative body of the Republic of Kazakhstan.

■ The Defendants assert that, as "foreign states," they are immune from this

court's jurisdiction. UWT argues that the Defendants are subject to the exception to jurisdictional immunity of a foreign state set forth in 28 U.S.C. § 1605(a)(2) because this civil action is based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act cause[d] a direct effect in the United States." The Defendants concede that they were engaged in commercial activity with UWT, but deny that this commercial activity caused "a direct effect in the United States." Thus, the court must determine whether the alleged actions of the Defendants satisfy the "direct effect" requirement of the FSIA.

Before *Republic of Argentina v. Weltover, Inc.,* ——— U.S. ———, ———, 112 S.Ct. 2160, 2168, 119 L.Ed.2d 394 (1992), the circuits were split as to whether the "direct effect" must be both "substantial" and "foreseeable", as suggested by the legislative history of the FSIA. *See International Housing, Ltd. v. Rafidain Bank Iraq,* 893 F.2d 8, 11 (2d Cir.1989); *America West Airlines, Inc. v. GPA Group, Ltd.,* 877 F.2d 793, 798–99 (9th Cir.1989); *Rush–Presbyterian–St. Luke's Medical Center v. Hellenic Republic,* 877 F.2d 574, 581–82 (7th Cir.), *cert. denied,* 493 U.S. 937, 110 S.Ct. 333, 107 L.Ed.2d 322 (1989); *Gould, Inc. v. Pechiney Ugine Kuhlmann,* 853 F.2d 445, 453 (6th Cir.1988); *Zedan v. Kingdom of Saudi Arabia,* 849 F.2d 1511, 1514 (D.C.Cir.1988); *Zernicek v. Brown & Root, Inc.,* 826 F.2d 415, 417–18 (5th Cir.1987), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 862 (1988). The Supreme Court in *Weltover* rejected "the suggestion that § 1605(a)(2) contains any unexpressed requirement of 'substantiality' or 'foreseeability.'" ——— U.S. at ———, 112 S.Ct. at 2168. The Court indicated that "an effect is 'direct' if it follows 'as an immediate consequence of the defendant's ... activity'." ——— U.S. at ———, 112 S.Ct. at 2168.

Relying primarily on *Weltover,* ——— U.S. at ———, 112 S.Ct. at 2168 and *Ampac Group, Inc. v. Republic of Honduras,* 797 F.Supp. 973, 977 (S.D.Fla.1992), UWT argues that the "direct effect" in the United States need only be slight. In *Weltover,* the Supreme Court concluded that Argentina's unilateral re-

scheduling of the maturity dates on certain bonds had a "direct effect" in the United States. ——— U.S. at ———, 112 S.Ct. at 2168–69. The Court noted that, because New York had been designated the place for performance of Argentina's ultimate contractual obligations, the rescheduling of those contractual obligations necessarily had a "direct effect" in the United States. UWT would have this court apply the same reasoning that was applied in *Ampac,* 797 F.Supp. at 977, that

> "*Weltover* therefore teaches that the effect in the United States need only be slight. Although the effect cannot be speculative, the contact with the United States may indeed be only a tangential one to support jurisdiction under the FSIA."

UWT argues that the terms of the Contract for Sale of Crude Oil satisfy the "direct effect" requirement for subject matter jurisdiction under § 1605(a)(2) because the Contract for Sale of Crude Oil called for payment in U.S. dollars, requiring a currency exchange transaction in the United States. UWT also argues that the "direct effect" requirement for subject matter jurisdiction under § 1605(a)(2) is satisfied because UWT has suffered a loss in the form of having to issue a contractual guarantee to indemnify ISAB for a term of six years for six million dollars, a loss of goodwill in the Denver business community and abroad, the loss of a relationship with ISAB, and a direct financial loss of income and profits flowing to its Denver office.

First, this court does not agree with the reasoning in *Ampac,* 797 F.Supp. at 977, that *Weltover,* ——— U.S. at ———, 112 S.Ct. at 2168, can be interpreted to mean that "the effect in the United States need only be slight." "[A]n effect is 'direct' if it follows 'as an immediate consequence of the defendant's ... activity.'" *Weltover,* ——— U.S. at ———, 112 S.Ct. at 2168. This standard from *Weltover,* ——— U.S. at ———, 112 S.Ct. at 2168, does not invalidate the reasoning applied in previous cases. *See Four Corners Helicopters, Inc. v. Turbomeca S.A.,* 677 F.Supp. 1096, 1100–02 (D.Colo.1988) ("[T]he focus is not on the nature of the injury sustained, but instead on the strength of the nexus between

the allegedly unlawful activity and the United States."); *Colonial Bank v. CGMF*, 645 F.Supp. 1457, 1465 (S.D.N.Y.1986) ("To extend jurisdiction to claims brought by all persons indirectly injured by commercial acts of foreign states would subject them to the jurisdiction of the United States courts in an enormously expanded number of cases."); *Upton v. Empire of Iran*, 459 F.Supp. 264, 266 (D.C.C.1978), *aff'd*, 607 F.2d 494 (D.Cir. 1979) ("The commonsense interpretation of a 'direct effect' is one which has no intervening element, but, rather, flows in a straight line without deviation or interruption.").

■ Second, although the "direct effect" clause of § 1605(a)(2) has been construed to provide subject matter jurisdiction over breach of contract claims where plaintiffs were U.S. citizens or corporations *and* where the contracts provided for payments to be made in the United States, "mere financial loss suffered by a plaintiff in the United States as a result of the action abroad of a foreign state does not constitute a 'direct effect' and therefore cannot by itself create subject matter jurisdiction under section 1605(a)(2)." *Gregorian v. Izvestia*, 871 F.2d 1515, 1527 (9th Cir.), *cert. denied*, 493 U.S. 891, 110 S.Ct. 237, 107 L.Ed.2d 188 (1989) (citations omitted) (emphasis in original). A plaintiff must establish that "something legally significant actually happened in the U.S." for FSIA jurisdiction to attach. *Zedan*, 849 F.2d at 1515.

■ The Preliminary Agreement that is the subject of the entire First Amended Complaint has virtually no connection with the United States. The Preliminary Agreement was signed in Moscow and memorialized UWT's plan to act as a broker in sales of oil by MOP to qualified buyers. The Preliminary Agreement contains no reference to the United States and no act contemplated under the Preliminary Agreement would have or did cause a "direct effect" in the United States. Nor did the alleged breach of the Preliminary Agreement for which UWT seeks relief cause any "direct effect" in the United States.

The only mention of the United States in the Contract for Sale of Crude Oil is in reference to a "first class European/USA bank" and to procedures to be followed in the event a payment was due on a banking holiday in New York. The terms of the Contract for Sale of Crude Oil did not cause any "direct effect" in the United States. The act of delivering the oil from Kazakhstan to Sicily had no "direct effect" in the United States. Aside from the transfer of funds after the commercial transaction, all of the commercial activity in this case occurred outside the boundaries of the United States. There was no connection with the United States in the purchase of, sale of, delivery of, or payment for the oil. The terms of the Contract for Sale of Crude Oil did not require any payments to be made in the United States. Although the currency exchange was done through a New York bank, the method of monetary conversion was not required by any term of the Contract for Sale of Crude Oil. The Contract for Sale of Crude Oil did not contain any mention of the method of payment of UWT's commission. Those financial transactions were governed by UWT's separate agreement with ISAB. UWT's contract with ISAB is not before the court. The damages UWT complains of, including the alleged guarantee to indemnify ISAB for a term of six years, derive from UWT's contractual relationship with ISAB, not from the Contract for Sale of Crude Oil between UWT, MOP, and KCFEA. UWT's alleged losses are consequential, not direct.

The court concludes that the losses allegedly suffered by UWT as a result of the Defendants' actions abroad are not "legally significant" in the context of the First Amended Complaint, see *Zedan*, 849 F.2d at 1515, and do not constitute a "direct effect" in the United States, see *Gregorian*, 871 F.2d at 1527. The nexus between the allegedly unlawful activity and the United States is not sufficient. See *Four Corners Helicopters*, 677 F.Supp. at 1100–02. The financial loss in the United States does not flow "in a straight line" from the alleged actions of the Defendants. See *Upton*, 459 F.Supp. at 266. The allegations that UWT makes are too remote to have caused a "direct effect" in the United States pursuant to § 1605(a)(2). UWT cannot satisfy the "direct effect" exception to overcome the immunity of foreign states and

their agencies and instrumentalities from suit in the courts of the United States. 28 U.S.C. § 1604. This court is therefore deprived of subject matter jurisdiction.

### 4. Personal Jurisdiction

 Personal jurisdiction under the FSIA is determined by resorting to the traditional minimum contacts test. *Richmark Corp. v. Timber Falling Consultants, Inc.*, 937 F.2d 1444, 1446–47 (9th Cir.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 295, 121 L.Ed.2d 219 (1992), citing *Gregorian,* 871 F.2d at 1529. A court may assert general personal jurisdiction if a non-resident defendant has "substantial" or "continuous and systematic" contacts with the forum state. *Richmark,* 937 F.2d at 1446–47, citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16 and 414 n. 9, 104 S.Ct. 1868, 1872–73 and 1872 n. 9, 80 L.Ed.2d 404 (1984). Where service is made under FSIA § 1608, the relevant area in delineating contacts is the entire United States, not merely the forum state. *Richmark,* 937 F.2d at 1446–47 (citations omitted).

Because the court has determined above that it does not have subject matter jurisdiction over this civil action, the court need not reach the issues of personal jurisdiction over the Defendants. However, the court notes that UWT's alleged basis for personal jurisdiction is tenuous at best. With or without considering the affidavits addressed by the respective motions to strike, the court considers the alleged contacts between the Defendants and the United States insufficient to support the exercise of personal jurisdiction over the Defendants.

### 5. Venue

 Because the court has determined that it does not have subject matter jurisdiction over this civil action, the court need not reach the issue of improper venue. However, the court notes that venue would not be proper in this judicial district under 28 U.S.C. § 1391(f)(1) or (f)(2) because there is no adequate showing that a substantial part of the events giving rise to the claim occurred in this judicial district or that the Defendants were licensed to do business or were doing business in this judicial district. The court does not address the doctrine of forum *non conveniens* or whether venue may have been proper in the District of Columbia under 28 U.S.C. § 1391(f)(4).

Accordingly, IT IS ORDERED:

1. The Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, Lack of Personal Jurisdiction, and Improper Venue is GRANTED.

2. The Defendants' Motion to Strike Newspaper Articles and Other Hearsay is DENIED as moot.

3. The Plaintiff's Motion to Strike is DENIED as moot.

4. This civil action is DISMISSED. Each party is to bear his, her, or its own attorney fees and costs.